STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1042

STATE OF LOUISIANA

VERSUS

PARNELL POCHE

************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. CR-2004-3752,
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and J. David Painter, Judges.

AFFIRMED.

Douglas L. Hebert, Jr.
District Attorney
Joe Green
Assistant District Attorney
Post Office Box 839
Oberlin, Louisiana  70655
Counsel for:
        State of Louisiana

Prentice L. White
Louisiana Appellate Project
Post Office Box 74385
Baton Rouge, Louisiana  70874
Counsel for Defendant/Appellant:
        Parnell Poche

Parnell Poche
In Proper Person
Elayn Hunt Correctional Center
Post Office Box 174
St. Gabriel, Louisiana  70776
Defendant/Appellant

SULLIVAN, Judge.

On March 24, 2005, Defendant, Parnell Poche, was convicted of committing battery of a correctional facility employee in violation of La.R.S. 14:34.5(B)(2) and obscenity in violation of La.R.S. 14:106. On April 8, 2005, Defendant filed a motion for post-verdict judgment of acquittal, which the trial court denied on April 12, 2005. Defendant also filed a motion for new trial on May 5, 2005; however, he withdrew this motion at the sentencing hearing.

At the sentencing hearing, the trial court ordered Defendant to serve two years at hard labor for the obscenity conviction and four years at hard labor without benefit of probation, parole, or suspension of sentence for the battery of a correctional facility employee conviction. The trial court also fined Defendant $500.00 for his battery conviction. The trial court ordered each sentence to be served consecutively with each other and with any sentence Defendant was already serving. After being sentenced, Defendant filed a motion to reconsider and correction of excessive and illegal sentence with the trial court, which the trial court denied. Defendant appeals, arguing that the State failed to meet its burden of proving one element of each crime. Defendant also filed a supplemental brief containing several *pro se* assignments of error.

### Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Review of the record, revealed one error patent and one possible error patent. The possible error patent—whether or not Defendant validly waived his right to counsel—is raised in Pro Se Assignment of Error No. 1; therefore, the error is addressed in that assignment.

The bill of information contains an error in the citation for the charge of battery on a correctional facility employee. In one portion, the bill correctly cites La.R.S. 14:34.5(B)(2) as the statute for battery on a correctional facility employee. In another portion, the bill correctly refers to the crime as "battery on correctional facility employee" and sets forth the appropriate elements of that crime but incorrectly cites La.R.S. 14:34.2(B)(2), which is the citation for battery of a police officer.

The erroneous citation of a statute in a charging instrument is addressed by La.Code Crim.P. art. 464:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Nothing on the face of the record indicates the citation error misled Defendant to his prejudice. The correct statute is cited in one portion of the bill, and the elements of the correct offense are set forth in the bill. Neither the minutes nor the pleadings indicate Defendant alleged any prejudice prior to trial. Accordingly, the error is harmless.

### *Facts*

Each cell block at the Allen Correctional Center is divided into tiers. A tier consists of a wide dead-end hall with thirteen cells lining the right side. Defendant lived alone in the thirteenth cell at the far end of the C-1 tier of the Mars Cell Block. Nurse Trisha Johnson and Sergeant David Amrine, employees of Allen Correctional Center, distributed medication to inmates at three o'clock in the morning as part of

2

their regular duties. The medication distribution duty required Nurse Johnson, escorted by Sergeant Amrine, to visit Defendant's cell two or three times a week.

On February 12, 2003, as per standard procedure, both Nurse Johnson and Sergeant Amrine announced pill call prior to entering the tier. When they entered the well-lit hall, they saw Defendant masturbating at the far end of the hall. Defendant had pressed himself against the bars of his cell, pushed his penis through the bars, and was stroking his erect penis outside of the bars with his hand. Inmate masturbation or exposure of himself to a prison employee is a violation of Allen Correctional Center's rules.

In accordance with policy, both Nurse Johnson and Sergeant Amrine asked Defendant to stop masturbating while they were at the beginning of the tier and several times thereafter. Defendant ignored the requests and continued to masturbate while Nurse Johnson distributed medication to the other inmates on the tier. When Nurse Johnson and Sergeant Amrine reached the eleventh or twelfth cell and saw that Defendant was not going to stop, Nurse Johnson announced, per standard procedure, that Defendant was refused medication. Nurse Johnson and Sergeant Amrine then turned around and walked toward the tier exit. Before they had gotten far, Defendant threw a liquid, which strongly smelled of urine, toward them. The liquid hit Nurse Johnson on her lower left leg and Sergeant Amrine's back. Throwing substances on the prison employees is also against the Allen Correctional Center's rules. At that point, Defendant told Nurse Johnson and Sergeant Amrine that he would teach them to not give him his pills by "p-ssing" or "sh-tting" them down every day.

Nurse Johnson and Sergeant Amrine testified that they neither invited nor wanted Defendant to throw anything at them and that Defendant's masturbation and

3

being hit by the urine were offensive to them. They each completed a written report describing Defendant's behavior.

Captain Terry Langley, an investigator at Allen Correctional Center, questioned Defendant about the incident. Defendant admitted throwing the liquid but told Captain Langley that it was soap and water.

### Sufficiency of the Evidence - Obscenity

The defense contends there was insufficient evidence to convict Defendant of obscenity because the State failed to prove that he intended to arouse Nurse Johnson by masturbating, asserting that inmate masturbation was commonplace at the prison and was done regardless of the audience.

In determining sufficiency of the evidence on appeal, this court has previously stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

> In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

4

*State v. Touchet*, 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony; thus, a reviewing court may impinge on the 'fact finder's discretion [ . . . ] only to the extent necessary to guarantee the fundamental due process of law.'" *State v. Johnson*, 03-1228, pp. 4-5 (La. 4/14/04), 870 So.2d 995, 998 (quoting *State v. Sylvia,* 01-1406, p. 3 (La. 4/9/03), 845 So.2d 358, 361).

The law prohibiting obscenity provides, in pertinent part:

A. The crime of obscenity is the intentional:

(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.

La.R.S. 14:106. Evidence that a defendant's genitals were exposed and that he was masturbating indicate that his actions were intended to arouse himself and is sufficient to support an obscenity conviction. *State v. Arabie*, 507 So.2d 859 (La.App. 5 Cir. 1987); *see also State v. Lewis*, 00-53, (La.App. 4 Cir. 12/13/00), 776 So.2d 613, *writ denied*, 01-381 (La. 10/5/01), 798 So.2d 966; *State v. Strong*, 446 So.2d 506 (La.App. 4 Cir. 1984); *State v. Walters*, 440 So.2d 115 (La.1983).

In *State v. Smith*, 04-805 (La.App. 3 Cir. 11/10/04), 887 So.2d 701, Smith appealed his obscenity conviction, alleging insufficient evidence. Smith was an inmate housed at the Avoyelles Correctional Center where a window in the inmates' shower room overlooked an employee desk area. Smith stood at the window, looked down at two female guards, and began to masturbate. From their desks where they were processing mail, both female guards observed Smith with his erect penis in his

5

hand.  Both female guards verbally ordered Smith to stop, but Smith ignored the orders and only ceased when approached by a male guard.  Smith argued that, because he was in the shower, he was in a private area; thus, he should have been free from "general observation by prison staff." *Id*. at 702.  This court found Smith's argument to be without merit, stating that Smith could not have reasonably expected privacy while standing at the window of the shower area.

When viewed in a light most favorable to the prosecution, the State sufficiently proved all the elements of obscenity against Defendant beyond a reasonable doubt. This assignment of error is without merit.

### *Sufficiency of the Evidence - Battery*

The defense next asserts that there was insufficient evidence to convict Defendant of battery of a correctional employee because the State failed to prove that urine was the substance thrown on the employees.  The State responds that there was sufficient evidence presented at trial to prove that the liquid was urine and that, alternatively, it did not need to prove that Defendant hit the correctional facility workers with a bodily substance as listed in La.R.S. 14:34.5(A)(3) because the legislature did not intend the list to be exclusive.

Louisiana Revised Statute 14:34.5 provides, in pertinent part, that:

A. (1)  Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty.

(2) For purposes of this Section, "correctional facility employee" means any employee of any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.

(3) For purposes of this Section, "battery of a correctional facility employee" includes the use of force or violence upon the person of the

6

employee by throwing feces, urine, blood, saliva, or any form of human waste by an offender while the offender is incarcerated and is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.

"Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La.R.S. 14:33.

Under La.Code Evid. art. 701, a lay witness may testify in the form of opinions or inferences when they are helpful to the determination of a fact at issue and are rationally based on that witness's perception. Lay witnesses are allowed to identify "substance[s] of common recognition," such as blood. *State v. Jones*, 315 So.2d 650, 653 (La.1975); *State v. Skipper*, 284 So.2d 590 (La.1973). Pursuant to *Jones*, *Skipper*, and La.Code Evid. art. 701, we find that lay witnesses may be allowed to opine whether a substance is urine because urine is also a substance of common recognition. Nurse Johnson, Sergeant Amrine, and Major LaSonya Thomas identified the substance Defendant threw on Nurse Johnson and Sergeant Amrine as urine by the smell of the substance. Nurse Johnson and Sergeant Amrine further testified that Defendant told them he would continue to throw urine and feces at them until he was given his medication. The only evidence presented to show that the liquid was not urine was Captain Langley's testimony that Defendant told him the liquid was soap and water.

Witness testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion in the absence of internal contradictions or irreconcilable conflict with physical evidence. *State v. Harris*, 01-2730 (La. 1/19/05), 892 So.2d 1238. There are no internal contradictions in the testimony or any irreconcilable conflict with physical evidence in the testimony of Nurse Johnson, Sergeant Amrine,

7

and Major Thomas; therefore, their testimony is sufficient to prove that Defendant was incarcerated in a correctional facility, that he knew Nurse Johnson and Sergeant Amrine were correctional facility employees performing their duties, and that he battered them by throwing urine on them. This assignment of error is without merit.

### Self-Representation

Defendant argues he was wrongly convicted because he did not validly waive his right to counsel. He contends that the trial court did not adequately advise and question him as required by U.S. Const. Amend. VI, U.S. Const. Amend. XIV, and La.Const. art. 1, § 13, and failed to inform him of the dangers and disadvantages of self-representation.

In *State v. Hayes*, 95-1170, pp. 4-5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685-86, this court stated:

> Before being allowed to represent himself, a criminal defendant must knowingly and intelligently waive his constitutional right to counsel. *State v. Mitchell*, 580 So.2d 1006 (La.App. 3 Cir.1991), *writ denied*, 613 So.2d 969 (La.1993).

> A criminal defendant is guaranteed the right to counsel by both the state and federal constitutions. U.S. Const. amend. VI; La. Const. art. I, § 13. Absent a knowing and voluntary waiver of the right to counsel, no person may be imprisoned unless represented by counsel at trial. *State v. Smith*, 479 So.2d 1062 (La.App. 3 Cir.1985), citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

> Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a

defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id*. at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Third Circuit Court of Appeal has repeatedly required the trial court meet the following requirements in determining whether a defendant has validly waived his right to counsel: first, determine a defendant's literacy, competency, understanding and volition, i.e.[,] was defendant's waiver of counsel made voluntarily and intelligently; and second, warn the defendant of the dangers and disadvantages of self-representation, so that the record establishes that the defendant knew what he was doing. *Mitchell*, 580 So.2d 1006; *Smith*, 479 So.2d 1062; *State v. Adams*, 526 So.2d 867 (La.App. 3 Cir.1988); *State v. Sepulvado*, 549 So.2d 928 (La.App. 3 Cir.1989); and *State v. Bourgeois*, 541 So.2d 926 (La.App. 3 Cir.1989), *writ denied*, 572 So.2d 85 (La.1991).

The correctness of granting a defendant the right to represent himself is judged by the record made in recognizing his right to do so, not by what happens in the course of his self-representation. *State v. Dupre*, 500 So.2d 873 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 55 (La.1987). Louisiana courts have applied this standard to cases where trial courts have allowed hybrid representation: hired or appointed counsel was not dismissed and remained to assist that defendant in his self-representation. *See State v. Brown,* 03-897 (La. 4/12/05), 907 So.2d 1; *State v. McCartney*, 96-58 (La.App. 3 Cir. 10/9/96), 684 So.2d 416, *writ denied*, 97-508 (La. 9/5/97), 700 So.2d 503; *State v. Penson*, 630 So.2d 274 (La.App. 1 Cir. 1993).

At the close of the State's case, Defendant took over his representation, assisted by his attorney, Ms. Abrusley:

MS. ABRUSLEY:

Mr. Poche will now take over his defense and I will assist Mr. Poche.

THE COURT:

Is that your request, Mr. Poche?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

I'm going to remind you that I told you before, this is a court proceeding. It is a dignified proceeding. You must follow the rules of criminal procedure and the rules of evidence. If you're asking a question and you fail to do so, you won't be able to ask the question. So keep that in mind in making your decision. There may be some things that are not proper before the Court. If you call a witness and they don't have anything that [is] proper, that's relevant to this matter or germane to this matter, they won't be able to testify and their testimony will be stricken. So you have to understand that going in. Do you understand that, Sir?

THE DEFENDANT:

Yes, Your Honor.

THE COURT:

Do you still wish to act as your own counsel?

THE DEFENDANT:

Yes, ma'am.

THE COURT:

On the basis of your prior representation of yourself in motions, I'm going to allow it at this point. But if at any point that I see that you're incapable of doing that, then Ms. Abrusley will take over the questioning. Do you understand that, sir?

THE DEFENDANT:

Yes, ma'am.

THE COURT:

> All right. (The jury is escorted into the courtroom.) When you have an objection, sir, you object, but all of the arguments are made here at the side bar and not in the presence of the jury. Next witness.

MR. GREEN:

> Your Honor, at this time the State would rest.

The trial court's interview with Defendant did not comply with the requirements necessary to determine whether Defendant validly waived his right to counsel. The trial court did not make an express determination regarding Defendant's literacy, competency, or understanding. Although the trial court asked Defendant if he wished to act as his own counsel, it failed to determine whether his waiver was intelligently made. Also, the trial court failed to adequately warn Defendant of the dangers and disadvantages of self-representation: it did not inform him that self-representation might have an adverse effect on the outcome of the case, tell him the elements of the offenses, or explain the maximum penalties that he would face if convicted. Therefore, the colloquy did not comply with the requirements set out in *Hayes*.

Based on the trial transcript alone, the trial court's actions were inadequate; however, based on the entire record, the trial court's determination was not error. Throughout the prosecution of his case, Defendant filed numerous pre-trial *pro se* briefs with the trial court. The trial court granted Defendant hearings on several of his pre-trial *pro se* motions, and upon his request, allowed Defendant to personally argue his motions. Additionally, the record shows that Defendant was advised of the elements of each offense prior to his assertion of self-representation during trial. At

Defendant's August 23, 2004 arraignment,[1] the State read the bill of information. The bill of information included the elements that the State intended to prove at trial. After being advised of the elements of the offenses, Defendant stated that he understood both of the charges.

At the time of Defendant's waiver of representation, the trial court was well aware that he was literate, competent, and understood the charges against him and the judicial process. Therefore, we find that, at the time of the waiver, the trial court only needed to ascertain Defendant's volition, which it did, to satisfy the first step of the *Hayes* test.

In *State v. Norman*, 99-600 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, *writ denied*, 00-971 (La. 3/23/01), 787 So.2d 1007, the fifth circuit concluded that the record should be examined for indications that a defendant was aware of the dangers and disadvantages of self-representation, noting that prior extensive experience with the judicial process and the criminal justice system, such as experience obtained through prior felony convictions, indicates that a defendant is aware of the dangers and disadvantages of self-representation.

At the sentencing hearing, the trial court discussed Defendant's prior extensive experience with the judicial process. Defendant is a fifth felony offender with a record dating back to December 27, 1983. In addition to the felonies, he has been convicted of six misdemeanor charges and has pled guilty to reduced charges on at least one occasion as a result of a plea bargain. Based on his prior extensive experience with the criminal justice system, we find that Defendant was aware of the

---

[1]Defendant had already been arraigned but was re-arraigned after the State amended his bill of information.

12

dangers and disadvantages of self-representation.  This assignment of error is without merit.

### *Sentencing*

Defendant contends he was convicted of and sentenced for battery of a police officer, in violation of La.R.S. 14:34.2.  He alleges that the trial court violated U.S. Const. Amend. 8 and U.S Const. Amend. 14 by sentencing him under the wrong subsection of La.R.S. 14:34.2.  He further argues that his sentence is illegally excessive because his sentence exceeds the maximum penalty set out in La.R.S. 14:34.2(B)(1) and La.R.S. 14:34.5(B)(1).

Defendant's contention that he was convicted of battery of a police officer arises from the misstatement of the statute number both in the bill of information and during sentencing.  In the bill of information, the body charged Defendant with "the offense of R.S. 14:3**4**.2(B)(2) BATTERY ON CORRECTIONAL FACILITY EMPLOYEE"; however, the heading correctly identified the statute number: "COUNT # 1: BATTERY ON CORRECTIONAL FACILITY EMPLOYEE, La. R.S. 14:34.**5**(B)(2)." (Emphasis added.)  At sentencing, the trial court correctly stated that Defendant had been convicted of battery of a correctional facility employee, but it incorrectly identified the statute as La.R.S. 14:3**4**.2(B)(2), battery of a police officer (emphasis added).  After the first misstatement of the statute number, the trial court went on to say:

> The penalty - the maximum penalty for the offense of battery of a correctional facility employee under that statute is that you shall be fined not more than $1,000.00 and imprisoned with or without hard labor, without benefit of probation, parole or suspension of sentence for not less than one year, nor more than five years.

13

After the second misstatement of the statute number, the trial court sentenced Defendant for battery of a correctional facility employee; it ordered Defendant to pay a $500.00 fine and to serve four years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant urges that the trial court's designation of the offense as battery of a correctional facility employee is irrelevant and that only the numeric portion of the reference should be considered.

Contrary to Defendant's contention, the record clearly shows that he was charged with, convicted of, and sentenced for battery of a correctional facility employee, in violation of La.R.S. 14:34.5(B)(2), not battery of a police officer. Any misstatement as to the statute number during sentencing is harmless because La.R.S. 14:34.2(B)(2) is identical to La.R.S. 14:34.5(B)(2). Both statutory provisions state:

> If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.

La.R.S. 14:34.2(B)(2); La.R.S. 14:34.5(B)(2). The paragraphs are identical; therefore, if Defendant's sentence is legal under La.R.S. 14:34.2(B)(2), it is legal under La.R.S. 14:34.5(B)(2). Defendant's sentence of four years at hard labor without benefit of probation, parole, or suspension of sentence and a $500.00 fine does not exceed the maximum penalty allowed under La.R.S. 14:34.5(B)(2) and is not illegally excessive.

Ignoring that he was convicted under La.R.S. 14:34.5(B)(2) and that the trial court specifically sentenced him under section (B)(2), Defendant asserts that he was

14

sentenced under La.R.S. 14:34.2(B)(3), the contents of which are similar to La.R.S. 14:34.5(B)(2). He argues that he could not legally be sentenced under La.R.S. 14:34.2(B)(3) because the battery did not cause an injury for which medical attention was required. Defendant contends that he should have been sentenced under the less onerous provisions of either La.R.S. 14:34.2(B)(1) or La.R.S. 14:34.5(B)(1), which both require the imposition of a fine not more than five hundred dollars and a sentence "not less than fifteen days nor more than six months without benefit of suspension of sentence." Defendant was convicted and sentenced under La.R.S. 14:34.5(B)(2); therefore, sections (B)(1) and (B)(3) are not applicable. This assignment of error is without merit.

### Vindictive or Selective Prosecution

Defendant argues that his rights to due process and equal protection were violated because he is the victim of selective and vindictive prosecution. He asserts that the trial court should have dismissed the obscenity charge and alleges that he was penalized for choosing a jury trial because the State filed the obscenity charge against him after he rejected a plea bargain on July 7, 2004. He further avers that he has been the only inmate prosecuted for obscenity at the Allen Parish Correctional Facility in spite of the numerous other inmates found guilty of violating Facility Rule 21.

*Vindictive Prosecution*

Constitutionally, the district attorney has charge of every criminal prosecution by the state in his district, La.Const., Art. 5 § 26, and he decides whom, when, and how to prosecute. La.C.Cr.P. art. 61. *See also State v. Coleman*, 465 So.2d 709 (La.1985). "Prosecuting agencies have broad powers in deciding whether to institute a prosecution in a given case. However, . . . this discretion must not be used

15

arbitrarily, capriciously, or maliciously, but rather must be used to further the ends of justice." *State ex rel. Guste v. K-Mart Corp.*, 462 So.2d 616, 620 (La.1985).

> A defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. *U.S. v. Krezdorn*, 718 F.2d 1360 (5th Cir.1983), cert. denied. In that regard, the court will examine the state's actions in the context of the entire proceedings. *Id*. The events in the case will create a presumption of vindictiveness if, to a reasonable mind, the filing of the [prosecution] can be explained only by a desire to deter or punish the exercise of legal rights. See *Id.*; *U.S. v. Esposito*, 968 F.2d 300 (3d Cir.1992). But where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness for a presumption will not apply. *U.S. v. Esposito, supra*. A mere opportunity for vindictiveness does not suffice. *U.S. v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *U.S. v. Esposito*, *supra*.

*State v. Stewart*, 27,049, p. 4 (La.App. 2 Cir. 5/10/95), 656 So.2d 677, 680, *writs denied*, 95-1764, 95-1768 (La. 12/8/95), 664 So.2d 420.

Defendant was originally charged with battery of a correctional officer, in violation of La.R.S. 14:34.5(B)(2). A new bill of information was filed on August 20, 2004; it charged Defendant with battery of a correctional facility employee and added the charge of obscenity. There is no indication in the record that the prosecutor was not acting within his authority when he filed a new bill of information. Furthermore, the record establishes that the obscenity charge was legitimate; therefore, to a reasonable mind, a desire to deter or punish Defendant's exercise of his legal rights was not the only explanation for the addition of the obscenity charge. Accordingly, there is no presumption of vindictiveness in the instant case, and Defendant must "affirmatively prove actual vindictiveness." *State v. Orange*, 02-711, p. 11 (La.App. 1 Cir. 4/11/03), 845 So.2d 570, 579, *writs denied*, 03-1352 (La. 5/21/04), 874 So.2d 161, 03-2195 (La. 7/2/04), 877 So.2d 137 (citing *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223 (1984)).

Defendant's only evidence that the prosecutor acted with actual vindictiveness is the testimony of other inmates that Defendant was not the only inmate who engaged in the obscene acts with which he was charged. In light of the validity of the obscenity charge, we find this evidence insufficient to establish that the prosecutor acted with vindictiveness when he added the additional charge of obscenity and that Defendant failed to meet his burden of proof. This assignment is without merit.

*Selective Prosecution*

In order to prove selective prosecution, Defendant must meet a heavy burden: he must first make a *prima facie* showing that he has been singled out for prosecution, although others similarly situated have not been prosecuted for the same acts, and he must demonstrate that the government's prosecution was motivated by unconstitutional grounds such as racial or religious discrimination. *State v. Mamon*, 98-1943 (La.App. 4 Cir. 9/8/99), 743 So.2d 766, *writ denied*, 99-2715 (La. 3/17/00), 756 So.2d 326; *State v. Honore*, 564 So.2d 345 (La.App. 5 Cir.), *writ denied*, 569 So.2d 968 (La.1990). Defendant does not allege that he was singled out for prosecution because he belongs to an identifiable class as race, gender, religion, or age. Therefore, his argument fails to encompass the second prong of the selective prosecution test, and his selective prosecution claim fails. This assignment of error is without merit.

*Disposition*

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**